Alexander Del Giorno, J.
This is a motion made by the claimant for an order striking out any defense of the State and directing judgment in favor of claimant pursuant to CPLR 3212 on the ground that there is no defense to this action.
The motion papers properly assume that upon the filing of a claim against the State issue is thereby joined on all material matters pursuant to the provisions of rule 13 of the Rules of the Court of Claims, which states: “ The state is not required to answer a claim and all allegations in the claim are treated as denied.”
The motion papers have as supporting proof the main affidavit made by an assistant vice-president of the claimant who is familiar with the facts, which alleges that on January 15, 1964, it made a loan to 575 Mediterranee Ltd. of $2,624.67 for which 575 Mediterranee Ltd. made an assignment back to the claimant, which it filed with the State. The net proceeds to the borrower were $2,500, for which sum the claimant issued two checks on January 21, 1964 to the “ order of N. Y. S. L. A. re: 575 Mediterranee Ltd.” to cover the deposit required by the State Liquor Authority on Mediterranee’s application for a liquor license. Later, the Liquor Authority disapproved the application and authorized a refund- of $2,500 in favor of Mediterranee, which the State refused to pay back, “ asserting the common law right of setoff where a refundee owes taxes to the State of New York.” (See “ Information — Subpoena Restraining Notice ” attached to motion papers.) All papers and documents mentioned above are part of the motion papers, including the claim.
*695 The State’s answering affidavit raises only one issue of fact, namely, that 575 Mediterranee Ltd. owed to the State unemployment insurance tax in the sum of $3,554.52, and franbhise tax in the amount of $32.25.
The State also asserts that the procedure of summary judgment is not available in the Court of Claims.
On the issue of whether or not the procedure of summary judgment is available in this court, we hold that it is available. The State is no more privileged than any person or corporation when it stands before the bar of justice as a litigant. It has assumed this honorable status by its own enactment of section 8 of the Court of Claims Act, and it has been granted a continuation of its equal status with its own citizens in the CPLR unless otherwise specified therein.
We desire to again draw the attention of the State’s representatives to CPLR 101: ‘ ‘ The civil practice law and rules shall govern the procedure in civil judicial proceedings in all courts of the state and before all judges, except where the procedure is regulated by inconsistent statute. ’ ’
Therefore, as to the issue of law, whether the procedure of summary judgment is available in this court, the State’s position is completely without merit. It is available.
We now advert to the issues of fact. It appears that since the State in its answering affidavit has raised a denial only to the right of claimant to demand the return of the $2,500, we consider that the State concedes the corporate entity of the claimant. (If it should not, we would accept the corporate existence. of “claimant and its right to do business in New York as a matter of common knowledge.) The State admits the $2,500 is withheld by the State for the reasons given above.
The Comptroller, in reply to information restraint subpoena, admits that on March 16, 1964, the State Liquor Authority forwarded to the Comptroller two refund checks totaling $2,500 in favor of 575 Mediterranee Ltd. It also admits that these funds are held by the Comptroller under the common-law right of setoff to satisfy unemployment taxes.
We find no issue here except that of determining whether the claimant is entitled to the full $2,500' or whether the State is entitled to the money by way of a setoff.
The Alcoholic Beverage Control Law specifies that alcoholic beverages may be sold only in premises for which the State Liquor Authority has issued a license. It provides that an application for such license may be filed provided, among other things, that it be accompanied by a bank or certified check or money order in the amount prescribed for the particular license. *696 Moneys thus received shall be turned over to the Comptroller (Alcoholic Beverage Control Law, § 125) who shall place such money in a special fund, etc.
If the license be not approved, section 56-a (subd. 2) provides that ‘ If the authority shall deny an application filed pursuant to this chapter it shall return the annual fee to the applicant and retain the filing fee.”
In this case the claimant, as the assignee, stands in the place of the applicant for a license. As such, is it entitled to the return of the said money?
We hold it is. We read the pertinent portions of the Alcoholic Beverage Control Law to mean that until the State Liquor Authority would approve the license, the Authority is merely an escrowee holding the money for a definite expected contingency. If it approved the application, then the contract with the applicant is consummated. Only upon such event it turns the money over to the general fund of the State in payment of the privilege the State grants to the applicant to conduct its business and dispense liquor during the period covered by the license fee. Contrariwise, if the State Liquor Authority denies the application, there we see no contract obligation on either side, and by the terms of the statute the State Liquor Authority must return the license fee.
The fact that the statute requires that the State Liquor Authority must deposit the license fee with the Comptroller does not change the right of claimant to its return. The Comptroller is only the depositary of the money which he must place in a special fund, to be held there for the very purpose of either returning the money upon the denial of the application, or of placing it in the general fund in the event the State becomes entitled to it by virtue of the approval of the application and the issuance of a license. Only upon approval may it be said that the Comptroller has valid statutory dispositive control of the money.
When this approval may have taken place and a license has been issued, should thereafter the license be extinguished and the applicant be entitled to a refund, under those circumstances the Comptroller could properly apply his common-law right of setoff against moneys owed by claimant to the State. This right, however, was not his to assert against a special deposit, the amount of which is advanced only because the State properly imposes that obligation on the claimant so that if the license is granted the State will not have to wonder whether the license money is forthcoming or not. However, should the State have *697 the right to arbitrarily apply the deposit money pending the granting or denial of the application, we would permit a negative operation of the governmental structure whereby the State Liquor Authority would approve an application for a license but could not issue said license unless the applicant would first square off all his troubles with the State and again make another deposit of moneys to cover the license. This is unthinkable but it could be, and since such happening is unconscionable on its face, we know it to be against the letter of the law and good conscience.
The very essence of the State’s good faith is involved herein. The State Liquor Authority, in accordance with the provisions of the statute, has ordered the return of the money. The Comptroller capriciously holds on to it. We believe he is flouting the mandate imposed on him by the statute. He is bound to follow the statute and return the deposit money. If Mediterranee Ltd. owes the State money, let the State use all its powers to collect the debt. We hold that this method is not one of its powers. It is a shortcut which we may not permit.
Capitol Distrs. Corp. v. 2131 Eighth Ave. (285 App. Div. 541) was a case similar to the present one. There the court held (pp. 543-544):
“ The assignment in the instant case was not one of a fund to come into existence in the future, but was of a present interest and for a present consideration. The loan, note, assignment and forwarding of the application and the lender’s check were substantially contemporaneous.
“ The payment required to be forwarded to the State Liquor Authority with a license application is a deposit. It loses its character as such only upon the future eventuality of the granting of the license, in which event the deposit becomes the license fee and a part of the fund provided for in section 125 of the Alcoholic Beverage Control Law. The fact that, in the interim and for administrative reasons, the money has been paid in to the Comptroller cannot be deemed to alter its identity as a deposit. The particular pocket in which an individual depositary carries the deposit is not important.” And, also, “ It is clear that an assignment of a refund to become due when and if a licensee surrenders his license is an assignment of a future interest. It must be equally clear that an assignment of a deposit requited to be returned to the depositor unless the license is granted, is an assignment of a present interest, and is a present appropriation of the fund in the possession of the depositary. (O’ Connell v. City of Worcester, 225 Mass. 159.) ”
*698 We hold, therefore, that the State had no right, equitable or legal, to retain the money which was never its own and which the statute commands the State to return. The claimant has met all the requirements of law for it to receive said money.
The claimant is entitled to summary judgment against the State for $2,500, with interest from March 17,1964, the day after the Comptroller received the $2,500 for refund to the claimant, to the date of entry of judgment herein.